Case No. 12-6285, Kennedy v. Merrill McPeak, McPeak v. Owens. Arguments, one could speak 15 minutes per side. 15 minutes will be shared by the defendants, and Mr. Weber will be charged with 10 minutes for the affidavit, and Mr. Leibowitz will be charged with 5 minutes for the affidavit. Mr. Holloman, you may proceed. Good morning. May it please the Court. My name is Scott Holloman. I'm from the New York law firm of Levy & Korzynski, and I represent the plaintiff appellant Patrick Lukas in this shareholder derivative action. This is a shareholder derivative action against the Board of Directors of Millard Energy Resources, and the action alleges breaches of fiduciary duty against all of the members of Millard's Board. This appeal arises out of the district court's decision to grant the defendants' motion to dismiss on-demand futility grounds. In short, before I get into the issues, I'd like to provide the Court with a very brief background of the facts and circumstances giving rise to the litigation. December 2009, Millard purchased certain oil and gas assets located in Alaska for about $2.25 million. Millard immediately turned around and recorded it as being worth $325 million. Over the course of the next nine or so months, Millard sequentially increased the valuation of these Alaskan oil and gas assets by a couple hundred million each iteration until, in August 2010, Millard represented that the assets were worth in excess of $1.2 billion. Now, of course, while Millard inflated the value of these assets, the stock price soared, and along the way, the Board also awarded Scott Boroff, Millard's CEO and also a member of the Board, substantially increased compensation arrangements along the way. Eventually, in July of 2011, the truth came out that the Alaskan assets were not worth nearly as much as Miller had said, and subsequent to that, the stock price predictably plummeted. A 10b-5 securities fraud class action lawsuit ensued, arguing that the defendants, Miller Energy and certain of its executive officers, misrepresented material facts concerning these Alaskan assets, and this derivative action also followed, alleging breaches of fiduciary duty against the Board that they caused or consciously permitted Miller to file false and misleading statements with the SEC and also that the Board awarded compensation to Scott Boroff in violation of their fiduciary duties. Now, were all members of the Board sued in the derivative action? Yes, Your Honor. Okay. And does the complaint make sort of any specificity as to individual members? I think there were nine Board members, is that correct? Yes, Your Honor. Does the complaint specify to any degree the basis upon which each member might be liable under the plaintiff's case? Well, the complaint alleges that certain members are members of the Audit Committee, which under Sarbanes-Oxley are tasked with reviewing the public filings, and also just the sheer enormity of this Alaskan asset, that it made the stock increase from 95 cents a share back in December of 2009 to almost $10 per share a year, a year and a half later, just the enormity of this purchase that it had on the company. There's no way the Board could not have been aware as a group of what was going on and its impact on the company and its returns. This was the single most important asset based on the represented value to the company. But moving ahead, the District Court, as I said, dismissed the complaint on demand futility grounds. Our first assignment of error is that the District Court disregarded a long line of established, consistent, unimpeached, unquestioned line of cases from the Tennessee Supreme Court. This is beginning with Dietrich and Wilson back in, I believe, 1874, running all the way through Aiken v. Mackey in 1958, and there was even a subsequent Supreme Court case five years later, Davis v. the Appalachian Electric Co-op in 1963. And all of these cases, the rule that flowed from those cases, and now I'm actually reading from Aiken and Mackey, it's a good synopsis of the rule. A demand upon the corporate authorities for redress of the grievance complained of may be dispensed with as a condition precedent in a stockholder suit in behalf of the corporation where it appears that such demand would be useless and unavailing and that it either would be refused or granted the litigation would necessarily be under the control of parties opposed to its success. It need not be made where the corporation is under the control of the wrongdoers or of persons who are necessary parties defendant. And under the Supreme Court's ruling in Erie many, many decades ago and principles of stare decisis, the District Court in this case was bound to follow the statements of the Tennessee Supreme Court. What year was that decision rendered? Aiken v. Mackey? Yeah. This was 1958. 1958? 1958. Yes, Your Honor. But the court went off on this Lewis case which was subsequent to that although it was a lower court. What about that? That's correct. The Lewis case was 1992. Do you think that court would know what the Tennessee Supreme Court said? Well, I think that part of it is the issue in Lewis. Just as the issue before this court in McCarthy almost a decade ago was that the demand futility was not an issue in Lewis. Lewis involved a very factually distinguishable circumstance. It involved a special litigation committee that had never been passed on in Tennessee law. And as part of deciding, so stepping back to the facts of that case, there was a shareholder in Lewis and he made a demand on the board. Unlike here, the shareholder in Lewis made a demand on the board to address certain issues. The board, throughout the course of the next several months, erected a pretty elaborate process of setting up an entire committee to address the shareholder's demand, ascertaining whether it was in the corporation's best interest to pursue that demand, and ultimately made a finding that the lawsuit should not proceed. That was the Lewis case. And the Tennessee Court of Appeals said, well, we've never had this issue in Tennessee. This is a first instance that the Tennessee courts have had an opportunity to address that. And so Lewis began with a very broad and generalized discussion of shareholder litigation. As part of that, it even quoted Dederich, saying that you don't need to make a demand if the defendants are the alleged wrongdoers, if the board of directors are the alleged wrongdoers. And then what Lewis decided to do is it looked into New York, the Massachusetts, the Delaware, and the North Carolina decisions that related specifically to special litigation committees. And what it ultimately decided to do is adopt an amalgamation of the North Carolina and the Massachusetts test. But nowhere did it ever address whether Dederich or Aiken versus Mackey or any of those other cases, which just from beginning to end includes Dederich, Wallace versus Lincoln Savings Bank, State versus U.S. Grant University, Peeler versus Luther, Burns versus the city of Nashville, Aiken versus Mackey, and then Davis versus the Appalachian Electric Co-op. Lewis never passed on those. In fact, in citing Dederich, we think that the Lewis court actually endorsed Dederich as still being good law from start to finish. But the only thing that it actually analyzed, and it spent several pages analyzing what the appropriate standard is for special litigation committees. And it said in passing, and it cited a Delaware case along the lines of, and by the way, here's what the standard is for a demand excuse case. It dedicated several pages to addressing the appropriate standard in special litigation committees, but a very short paragraph to a demand excuse case. Now, between the time that the Supreme Court case came out and the Lewis case, we had this new statute and the rule. Did we just disregard the statute and the rule? I don't think that we do disregard the statute and the rule, but I think that we need to look at them for what they really are. Federal 23.1, and this is a federal case, so we need to follow the procedural rules of the federal procedure. But it states that a shareholder needs to state whether he made a demand, and if not state particularity the reasons why he didn't make a demand or why a demand should be excused. Tennessee's Rule 23.06 simply parrots the federal rule of civil procedure. It's a Tennessee procedural rule that copies the federal rule. And the Tennessee statutory enactment is also procedural. A lot of the states, they enact rules within their Business Corporations Act that simply mimic the federal rules, but it's a simply procedural rule. The legislature gave no indication that it intended to overturn the substantive right, and Cayman v. Kemper Financial Services, the United States Supreme Court that has touched on Rule 23.1, states that demand futility is a substantive issue of state law. And I think that those Tennessee rules, they might have clarified procedurally what needs to be done, but it did not change the substantive demand futility standard as adopted by the Tennessee Supreme Court. I think that one of the things that the rules was designed to address is just bland, vague pleading that we didn't make a demand because demand would have been futile. I think that the Tennessee decisions dating back to U.S. Grant, which has a particularity requirement, and Diederick, which says – Diederick's actually a very lengthy discussion, a helpful discussion. It says that you need to allege why they're the wrongdoers, and if the directors are those wrongdoers, that demand would be futile. We think that that's what we did here, and that Diederick mandates that demand is futile in this case. You know, Judge Seiler asked about the rule and also about the statute, this 4817-401B. Yes. And my understanding is your argument is that that is a – it's purely procedural. Is that correct? That's correct. Okay, and what authority do you have that would support that argument? Because whether – I'm not sure if it makes a difference or not, but the statute seems to be contained with other substantive provisions of Tennessee, you know, corporate law. So is there anything that I can look to that will make it clear that that's a procedural provision as opposed to one of substantive? Well, I believe the Healthways case is one of the cases – and I'm trying to recall if you cited it in our brief. The Healthways case is a case where the plaintiffs actually – it was a Utah corporation, but because the case was in Tennessee, because the company was headquartered in Tennessee, the plaintiffs attempted to rely on Rule 23.06 and also the statute, the Tennessee statute that you just cited. And that statute, it repeats almost verbatim Rule 23.06. I think just looking at it, it says a shareholder must plead with particularity or it's talking about the steps that need to be taken and not any substantive right. So if you look at it, just looking at it, comparing it to the procedural rules, it appears procedural on its face. But also the court in the Healthways case said that that statute and the accompanying rule, or vice versa, however you want to look at it, does not create a demand. Because in Utah, they have what's called the universal demand requirement. But the existence of this Tennessee statute and the existence of Rule 23.06, which contemplates the demand may be excused, does not actually create a demand excusal case for a corporation like a Utah corporation where you have to make a demand regardless of the situation. Okay. Thank you, Mr. Holliman. Your initial time has expired, but you will have your rebuttal time. Thank you. Good morning. May it please the court, I am Rob Weber. I represent all of the appellees with the exception of Scott Boroff, who is the CEO of Miller Energy. And he is going to be represented here today by my colleague, Mr. Leibowitz. We reserve five minutes for Mr. Leibowitz to make comments and address any questions that you have after my time. As Judge Seiler and Judge Cole, you both realize the law in Tennessee for pleading demand futility is contained in Section 48-17-401, which is the statute that was enacted by the Tennessee legislature in 1986. Is that procedural or substantive? Substantive. Substantive. And I would direct your honors to the case Hicks v. Lewis, which we cited in our brief, 148 SW 3rd 80 at page 85, where it stated, and I quote, the demand doctrine is a matter of substance, not procedure, unquote. And the Hicks case cites to the Supreme Court decision in Cayman, which all of the parties have also cited to. And as you are surely aware, in the Cayman case, the Supreme Court stated that the demand requirement, that courts need to look to the substantive law of the state of incorporation of a company that's involved in a shareholder derivative action because the substantive law of each state defines the demand requirement. I believe that Cayman also says that Rule 23.1, it gives effect to the substantive laws of the various states that have demand requirements. And the reason why there are demand requirements is because a shareholder derivative action is, of course, an extraordinary remedy. It's a remedy that takes the power of a corporation to sue away from a corporation's board and puts it into the hand of a shareholder. And so that's a very unusual situation. And so courts and procedures in every state that I'm aware of set up procedures like Section 48.17.401 in Tennessee that provides hurdles, if you will, that a shareholder must overcome in order to proceed with a shareholder derivative action. One of the particular requirements, pardon the pun, under Section 48.17.401 is the with particularity requirement. And the statute requires a plaintiff shareholder to allege with particularity facts establishing why the person did not make a demand if the person did not make a demand upon the board to take action before filing suit. Is this contrary to the Diedrich case? I don't know if it's contrary to, but I think it's in addition to and supplements the Diedrich case. The Diedrich case does not require pleading with particularity. There's no case that I am aware of that imposed a with particularity requirement to the pleading of demand futility in a shareholder derivative case prior to the enactment of the statute in 1986. So in that way, Section 48.17.401, when it was enacted by the Tennessee legislature, bolstered the prior law in some regard. And it made Tennessee law consistent with not only Rule 23.1, but also the laws of many other states, the law of shareholder derivative actions, as they have developed over the 140 years since the Diedrich case. Section 48.17.401 is based largely upon the Model Business Corporations Act of 1984, and it's consistent with the law in states like Delaware, New York, and California, where I'm from. Now while the legislature enacted this with particularity requirement in the statute, it left to the courts the job of figuring out how to evaluate whether that particularity standard has been met in each specific case. Six years after the statute was enacted, along comes the Lewis v. Boyd case, and that's the first time in which a Tennessee court of appeal articulated a test which could be applied to evaluate whether a plaintiff had successfully alleged demand futility with particularity or not. And the test that was adopted in Lewis v. Boyd is the two-pronged test, which we both describe in our papers, which require a plaintiff to plead particularized facts, raising a reasonable doubt that a majority of the board of directors is not disinterested, is not independent, and that the challenge transaction in the lawsuit is not protected by the business judgment rule. Now since Lewis, there have been at least a half dozen cases in the Tennessee courts of appeals, in district courts sitting in Tennessee, and this court, in the McCarthy case, which approvingly cited the application of that test in demand futility cases. Even in some of the cases where the two-pronged test was not expressly quoted, and I'm thinking of two cases which the plaintiff cite in their brief, that's Memphis Health and the direct general case, even both of those cases stated that when evaluating demand futility, a court needs to, and I'm quoting Memphis Health here, examine the interest and independence of the corporate decision makers. So the test is not as simple as plaintiffs make it sound, which is if a plaintiff simply names all the directors as defendants in a derivative suit, then demand is excused. That's not the test. A court needs to look at the facts that are alleged regarding the interest and independence of those directors, and that's what Judge Varlin, in lower court here, did. In terms of this with particularity requirement, does the plaintiff need to allege with particularity the claimed liability against each and every defendant? Must there be some specific allegation or statement with respect to all nine board members? Well, in the limited number of Tennessee cases on this subject, there's no clear guidance. If one would look to other states such as Delaware, the answer is yes. And it's not necessarily that the plaintiff needs to allege liability, as your Honor said. What the plaintiff needs to allege in particular is regarding whether a majority of the board is not independent or is interested in the transaction. And a typical way that a plaintiff would allege that a director is interested is if there was a transaction, say it was some sort of acquisition, in which a director was receiving some sort of compensation. That would be a type of allegation showing a lack of independence or interest. So does the complaint need to allege as to every single one of the directors? I don't think that's required, but there need to be allegations as to a majority of the directors. And again, here Judge Varlin took a look at the allegations regarding independence and interest as to the directors of Miller Energy. He spent several pages of his decision analyzing this, and he came to the conclusion that the complaint did not allege facts showing that a majority of the directors of Miller were interested or independent. I want to say just very quickly one thing about Dederich and the line of cases that the plaintiffs, or excuse me, the appellants rely on. If you actually look at that line of cases, they don't stand for the proposition that appellants promote. And many of the cases following Dederich were not even shareholder derivative cases. The Aiken v. Mackey case, which Mr. Holliman mentioned to you a few minutes ago, that's not a shareholder derivative case. The Peeler case, that's not a shareholder derivative action. There really isn't a single shareholder derivative action that I have identified post-1900 that cites the Dederich case for the proposition that simply naming all of the directors as defendants in a shareholder derivative action excuses the plaintiff from making a demand. My time is up, and so I'm going to turn this over to Mr. Wiebowicz. Thank you very much. Thank you, Mr. Weber. Good morning, Your Honors. Good morning. My name is Larry Wiebowicz of the Knoxville, Tennessee Bar, and I'd like to start by recognizing Brandon Tindall, my law clerk, and Steve Markin, counsel for Miller Energy, who are here with us today on our team. I'd like to begin by correcting something that Mr. Holliman said earlier. The history of this alleged problem is that Scott Borff became CEO of Miller Energy in about 2007 or 2008, but in December of 2009, he found himself in bankruptcy court in Delaware. And his background was he was a real estate broker and dealer, shopping centers and apartment houses, so he was a dealmaker. And then he had gotten licensed as an investment banker and was working with an investment banking house in New York and sharing a little bit about real investments and securities. And someone told him that there was a deal in this bankruptcy court that he'd be interested in. He goes to the bankruptcy court and spends four months. And all the stars aligned. He had all these skills that let him analyze the problem, and he was able to get the bankruptcy court in Delaware to strip away the assets that had burdens, environmental burdens and so on, and he winds up with 700,000 acres of leased oil and gas land from the state of Alaska. Midstream assets that are worth $150 or more million if they were to be valued today, consisting of a production facility for 50,000 barrels a day, pipelines, roads, power plants, and an offshore platform. The offshore platform has room for 27 wells. Seven wells had been completed and shut in, so it was not operating. It's a state-of-the-art platform. Today, that platform is producing better than $70 million a year worth of oil and gas. But what you say, shouldn't that be left up to the court to decide on the shareholder's derivative suit? Exactly, Your Honor. But because Mr. Holliman started with the premise that we had taken something of little value and lied about it, I need to let the court know we take great umbrage at that because we didn't value those assets, KPMG and a series of independent companies that do this for a living, for oil companies, valued it. And so we take umbrage at the basic premise of the litigation. But that's really not before the court because the district court didn't have that. It just had the allegations and the complaint. I agree with that completely, Your Honor. Now, if we go back to the Dedrick case that the court has asked about a moment ago, in Dedrick, I think that it's important to recognize that Dedrick is fact-specific, very fact-specific, because in Dedrick, the directors were doing insider dealing because they knew stuff that the minority shareholders didn't know. And they talked the minority shareholders into selling their stock at cheap prices. That's what the Dedrick case is about. It's a theft case. So in that case, the directors were really bad actors because they had been alleged to and apparently were proved to be stealing from their own shareholders. That's not the case here. There's no such allegation here. And in Dedrick, where it says that you can sue without demand if the company is still under the control of those who must be defendants in the suit, first of all, it says must be defendants, not may be defendants, are defendants. Must be defendants. Must be defendants means that you have to look at whether or not they should be defendants, which is what Judge Voiland did here. Secondly, two paragraphs down, the court says, under these circumstances, we hold such and such. Under these circumstances means it's fact-specific. The facts being that insider trading to steal from your own shareholders, that gets you sued. But overvaluing property when you didn't even value it is not the sort of thing that would even fit within Dedrick. Now, the Lewis case that has been cited, I think it's interesting to note, it's Lewis, H.R.L. Citizens Savings Bank v. Boyd at 838 Southwest 2nd, 215. It's interesting to note that it was written by Judge Koch. Judge Koch then was on the Court of Appeals, but today he's on the Supreme Court of the State of Tennessee. And I think that may be of interest to the court. I think that this case is a very simple case, Your Honor. The statute controls. You have to plead with particularity. Judge Voiland made a careful analysis of the matter. He determined that pleading with particularity did not occur here and that under the law, this case must be dismissed. Thank you. Okay, thank you, Mr. Lieber. Let's see. Mr. Alleman? I think that when I was first up, the discussion of substance and procedure was an important thing, whether the Section 4817.401 is a procedural rule, what kind of effect it might have on the substantive demand utility standards. Can we know by what the court said in Lewis that it's a matter of substance and not procedure? That's what they said. Is that not correct? Well, I think that earlier we were talking about whether Lewis, whether the enactment of these procedural rules and also of TC, the Tennessee Business Corporations Act 4817.401, whether that substantively affected demand utility standard. I'll note that in Federal Rule 23.1, Tennessee Rule 23.06, and the Section 4817.401 say nothing about what the applicable demand utility standard is. And earlier the court had asked me if I was aware of any authority, and in our reply brief when I was sitting at the table, we cited on page 17 of our reply brief May versus National Bank of Commerce 387, Federal Supplement 2nd, 770, which stated that, it noted that TCA 4817.401 states the procedures required in derivative proceedings. One of those procedures is, in fact, that you have to make a verification. Those sorts of procedural things don't impact the substantive demand utility test, as we believe was stated first in Dederich and then subsequently by a number of other Supreme Court cases. Earlier I had also said that I believe it was the Healthways case that involved the Utah Corporation. Just for the sake of clarity, it was also Hicks. It was Hicks that involved the Utah Corporation, and the Hicks court said that these Tennessee statutes or these Tennessee rules did not create a demand futility exception where one did not exist under Utah substantive law. No case has ever cited either Rule 2306 or 4817.401 as substantively affecting the demand futility standard. No case has ever said that that's why Lewis is good law. I think that it's mainly a matter that those issues had not yet been presented to the court. And I think that we also need to remember the Rules Enabling Act says that these procedural rules, starting with the Federal Rules of Civil Procedure, which serves as the model for Rule 23.06 and TCA 4817.401, that they do not enlarge, abridge, or modify substantive rights. And Kamen v. Kemper Financial Services says that the demand futility test is a matter of substance. I think with respect to whether the Dederich rule was in fact a rule, I would just urge the court to review the long line of cases. Many of them were shareholder derivative actions, but the principles stated in all of those cases are clear and consistent, that if you sue the board, if those are the alleged wrongdoers, then demand would be futile. And if you think about it, it makes perfect practical sense. If I go to the board and I say, you've breached your fiduciary duty, I want you to sue yourself, they're going to say no. Now, of course, some courts have said... It'd be easy to do that, though, wouldn't it? It'd be easy to do that, knowing what the rule is. You could just send them a letter and say, how about doing this? And they'd say no, and then you could file suit, right? But the fact remains that there is a demand futility exception. So the rules and the substantive laws, as stated by the courts, have said you don't need to make a demand where it would be idle ceremony. And it's not for me or the federal courts to judge whether that's an appropriate policy under Tennessee law. One last thing with respect to what the test is that the Aaronson and the Lewis courts stated. We make an argument about the disjunctive versus the conjunctive, that Aaronson has two prongs, and assuming that Lewis is correct in adopting Delaware law, and I know my time's out, so I'll keep this very, very short, it would make no sense for it to be read in the conjunctive. Absolutely no sense for you to say that directors have to be both disinterested and independent, and that their decisions are protected by the business judgment rule, because there's such an overlap. We think that the test in Delaware, and that's what Lewis cited, is that you can prove either prong one or prong two, and the district court here decided prong one, didn't address prong two, and that we think is our second basis for reversing the district court's decision. Okay, thank you Mr. Hallam, and thank you to all counsel for your arguments today. We appreciate them. The case will be submitted, and you may call.